IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY GIRALDES,

        Plaintiff,                         No. CIV S-01-2110 LKK EFB P

    vs.

T. PREBULA, et. al.,

        Defendants.               FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. His complaint alleges that defendants were deliberately indifferent to his medical needs and inappropriately authorized his medical transfer from California Medical Facility ("CMF") to High Desert State Prison ("HDSP"). Defendants have moved for summary judgment. For the reasons set forth below, the motion should be granted as to defendant Sauhkla and denied as to defendants Andreason, Gavia and Prebula.

**I. Background**

        Defendants filed a motion for summary judgment on April 28, 2005. Dckt. No. 62. On January 25, 2006, the previously assigned magistrate judge recommended that defendants' motion for summary judgment be granted. Dckt. No. 98. On March 27, 2006, the district judge declined to adopt the magistrate judge's findings and recommendations, found that disputed facts

existed, and remanded the case to the magistrate judge for further proceedings. Dckt. No. 102. Defendants filed an interlocutory appeal. Dckt. No. 103. On May 6, 2008, the Ninth Circuit Court of Appeals dismissed the appeal. Dckt. No. 118.

The previous magistrate judge concluded that summary judgment should be granted. His findings and recommendations set forth the factual background of the case as follows:

> Plaintiff alleges defendant Sauhkla, upon instruction from defendants Prebula and Gavia, prepared a memorandum authorizing plaintiff's transfer from California Medical Facility (CMF) to High Desert State Prison (HDSP) and [defendant] Dr. Andreasen approved the transfer knowing HDSP could not provide adequate medical care for his severe digestive problems, Hepatitis C and knee problems and that within days of the September 28, 2001 transfer plaintiff began to suffer vomiting and intestinal bleeding but was denied medical attention upon the ground the necessary care was unavailable at HDSP. . . .
>
> The following facts are undisputed: Plaintiff was a prisoner at the California Medical Facility (CMF) from July 28, 1994, until September 28, 2001, when plaintiff was transferred to High Desert State Prison (HDSP). At all times relevant, defendant Dr. Andreasen was the Chief Medical Officer and defendant Dr. Sauhkla was a physician at CMF. Defendants Prebula and Gavia were correctional counselors at CMF.
>
> California Medical Facility is a prison staffed and equipped for prisoners with medical or psychiatric needs requiring specialized and continuous care. Inmates with medical conditions requiring frequent outpatient diagnostic, treatment, or rehabilitative services are designated, "Category O." Such a designation can override a classification otherwise warranting placement in a more secure institution.[]
>
> After portions of plaintiff's esophagus and stomach were removed in 1985, he began to suffer from gastroesophageal reflux disease (GERD), a condition in which acid flows into the canal leading to the stomach. Plaintiff cannot eat large portions of food and is subject to nausea, vomiting, bloating, and diarrhea. Plaintiff loses weight easily.
>
> Treatments for GERD include elevating the head about six inches while sleeping, medicines, eating several small meals daily instead of three large meals and regular liquid dietary supplements.
>
> In 1994, plaintiff was designated "Category O" and was transferred to CMF, where he variously received a liquid diet or high-protein drinks, double portions of meals to be eaten as several

small meals and the medicine Prevacid, which blocks the production of stomach acid.

In 1996, plaintiff began accumulating disciplinary convictions for trafficking narcotics, threatening staff, possessing a controlled substance, threatening a non-inmate, assault on a non-inmate, possessing of marijuana and burning a mattress.

In 1997, plaintiff underwent knee surgery to reconstruct one knee but he re-injured it. Orthopedic specialists examined plaintiff but disagreed about the advisability of additional surgery.

June 6, 1998, a physician not named as a defendant recommended rescinding plaintiff's Category O designation because plaintiff had not had serious medical problems since 1994. February 7, 2001, defendant Sauhkla found plaintiff's medical needs could be satisfied by any institution with outpatient care available,[1] recommended rescinding plaintiff's Category O designation and recommended transferring plaintiff to any institution consistent with his custody needs.

Defendants Andreasen and Sauhkla periodically consulted orthopedic specialists, compared recent and remote knee x-rays, examined plaintiff, monitored plaintiff's GERD symptoms and adjusted plaintiff's treatment. Defendant Andreasen authorized plaintiff's use of a cane or a brace and plaintiff's weight occasionally dropped. Plaintiff developed gallstones and was diagnosed with Hepatitis C.

August 28, 2001, plaintiff appeared before a classification committee (UCC) that included defendants Gavia and Prebula. Defendant Andreasen appeared and recommended plaintiff be transferred either to Salinas Valley State Prison (SVSP) or to HDSP. After considering plaintiff's disciplinary record and defendant Andreasen's recommendation, the committee determined plaintiff should be transferred either to HDSP.

September 28, 2001, plaintiff was transferred to HDSP.

October 3, 2001, a physician at HDSP examined plaintiff and questioned whether plaintiff should be confined there. But December 17, 2001, the physician determined that HDSP could provide the medical care plaintiff required.

---

[1] The magistrate judge wrote "with outpatient care." Plaintiff noted in his objections to the magistrate judge's findings and recommendations that the doctor actually wrote "without patient care available." *See* Dckt. No. 100, Ex. C. However, the doctor's declaration states that his dictated statement was erroneously typed, and that he intended to write "with outpatient care." Dckt. No. 65, Attach. 8.

3

Dckt. No. 98. The magistrate judge found that there was no evidence implicating defendants Prebula and Gavia in any wrongdoing. *Id.* He found that there was no evidence that defendants Sauhkla and Andreasen "knew of facts from which they could infer plaintiff's needs could not be satisfied" at HDSP, yet drew the inference and recommended the transfer anyway. *Id.* The magistrate judge thus concluded that summary judgment should be entered as to all defendants. *Id.*

Plaintiff's objections to the magistrate's findings and recommendations alleged that defendants Andreasen and Sauhkla knew of the risk that HDSP could not provide adequate medical care, as he had put them on notice by filing an institutional appeal before the transfer. He attached a copy of his appeal, dated August 28, 2001, stating:

> Transfer to a non-medical institution will result in a threat to my health and safety, and could cause other serious and irreparable harm, when I don't have immediate access to medical care . . . my continued need for my full liquid diet, plus 6 Hi Pro Ensures, warrants placement in an institution that can meet that need, plus access to a specialist in internal medicine to treat my Hepatitis C virus.

Dckt. No. 100, Ex. B. Plaintiff's objections also allege that defendants Prebula and Gavia told him that they created a new medical file with "bits and pieces of 'crap in it like a couple of blood tests and x-rays' when they asked defendant Sauhkla to draft the fraudulent document to cause the immediate transfer." *Id.* He also alleges that defendant Andreasen stated, with regard to the transfer, "I'm sorry I had to do that to you, but you pissed them off so bad I had no choice." *Id.*

The assigned district judge declined to adopt the magistrate judge's findings and recommendations, and remanded the case for further proceedings. Dckt. No. 102 at 2. The district judge wrote that:

> The magistrate judge's findings state[] that "[t]here is no evidence that implicates [defendants] in any wrongdoing." Plaintiff, however, asserts that defendants knew he would not receive adequate care for Hepatitis-C at HDSP, and indeed, it appears the record raises several disputed material facts. First, a physician at HDSP initially questioned whether plaintiff's medical needs could be satisfied at HDSP. Further, plaintiff states in his objections that

4

> he has previously pointed out to the court that defendants drafted fraudulent documents and were complicit in transferring him to a facility that could not provide him adequate medical care. From what the court can tell, disputed facts exist warranting closer scrutiny of the parties' evidence and the motions pending before the court.

*Id.*

## II.  Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The utility of Rule 56 to determine whether there is a "genuine issue of material fact," such that the case must be resolved through presentation of testimony and evidence at trial is well established:

> [T]he Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the nonmoving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) (emphasis added).  Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  No longer can it be argued that *any disagreement* about a material issue of fact precludes the use of summary judgment.

*California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added).  In short, there is no "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Grimes v. City and Country of San Francisco*, 951 F.2d 236,

5

1  239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322).  There can be no genuine issue as to any
2  material fact where there is a complete failure of proof as to an essential element of the
3  nonmoving party's case because all other facts are thereby rendered immaterial.  *Celotex,* 477
4  U.S. at 323.

5        Focus on where the burden of proof lies as to the issue in question is crucial to summary
6  judgment procedures.  "[W]here the nonmoving party will bear the burden of proof at trial on a
7  dispositive issue, a summary judgment motion may properly be made in reliance solely on the
8  'pleadings, depositions, answers to interrogatories, and admissions on file.'"  *Id.*  Indeed,
9  summary judgment should be entered, after adequate time for discovery and upon motion,
10 against a party who fails to make a showing sufficient to establish the existence of an element
11 essential to that party's case, and on which that party will bear the burden of proof at trial.  *See*
12 *id.* at 322.  In such a circumstance, summary judgment should be granted, "so long as whatever
13 is before the district court demonstrates that the standard for entry of summary judgment, as set
14 forth in Rule 56(c), is satisfied."  *Id.* at 323.

15       To overcome summary judgment, plaintiff must demonstrate a factual dispute that is both
16 material, i.e. it affects the outcome of the claim under the governing law, *see Anderson v. Liberty*
17 *Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*,
18 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is such that a reasonable jury
19 could return a verdict for the nonmoving party.  *See Wool v. Tandem Computers, Inc.*, 818 F.2d
20 1433, 1436 (9th Cir. 1987).  In this regard, "a complete failure of proof concerning an essential
21 element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*,
22 477 U.S. at 323.   In attempting to establish the existence of a factual dispute that is genuine, the
23 opposing party may not rely upon the allegations or denials of its pleadings but is required to
24 tender evidence of specific facts in the form of affidavits, and/or admissible discovery material,
25 in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475
26 U.S. at 586 n.11.  It is sufficient that "the claimed factual dispute be shown to require a jury or

judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.

With these standards in mind, it is important to note that plaintiff bears the burden of proof at trial over the issue raised on this motion, i.e., whether the defendant acted with deliberate indifference to the plaintiff's safety. Equally critical is that "deliberate indifference" is an essential element of plaintiff's cause of action. Therefore, to withstand defendant's motion, plaintiff may not rest on the mere allegations or denials of his pleadings. He must demonstrate a genuine issue for trial. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989). To successfully oppose the motion he must present evidence bearing upon the dispositive issue in question and that evidence must be such that a fair-minded jury "could return a verdict for [him] upon the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252. If the evidence presented could not support a judgment in the opposing party's favor, there is no genuine issue for trial. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. at 323.

**III. Analysis**

As noted above, plaintiff claims that defendants were deliberately indifferent to his medical needs by inappropriately authorizing his medical transfer from CMF to HDSP. Defendants argue that summary judgment should be granted because 1) Prebula and Gavia had no part in plaintiff being medically cleared to for transfer to HDSP; 2) Sauhkla and Andreasen's recommendation to transfer plaintiff to another prison was based solely on medical considerations; 3) plaintiff received satisfactory medical care at HDSP and 4) defendants are entitled to qualified immunity. *See* Dckt. No. 63.

Plaintiff's substantive claim is that these defendants violated his Eight Amendment right to be free of cruel and unusual punishment. Prison officials violate the Eighth Amendment when they engage in "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prison official is deliberately indifferent when he knows of and disregards a risk of injury or harm that "is not one

7

that today's society chooses to tolerate." *See Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official must "be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference "may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

In this case, plaintiff alleges that defendants Prebula and Gavia created a fraudulent medical file so that defendants Andreasen and Sauhkla would change his medical classification, allowing his transfer to HDSP. Plaintiff argues that defendants Andreasen and Sauhkla did so and did not reverse their decision although he filed an internal appeal claiming that HDSP could not provide for his medical needs. Plaintiff's declaration states:

> Defendants Prebula and Gavia made numerous threats to have me transferred to a "war zone" throughout my placement at CMF. A "war zone" in prison terminology is a prison that has a high propensity for violence. I told defendants Prebula and Gavia on multiple occasions about the seriousness of my medical condition in classification committees, and in personal conversations. I specifically told them at the classification committee in August 2001 that a transfer to a facility without the resources that were available at CMF could result in a fatal bleeding occurrence, and non treatment of my condition could, over time, result in cancer of my esophagus. Defendants Prebula and Gavia told me, "602 it." On 8-20-01 I filed an (ADA) appeal that outlined my conditions and put defendants on notice that I was being considered for a transfer to a institution that could not provide my specialists' ordered diet, elevated bed, and "immediate medical interventions in the case of internal bleeding." It also requested I be placed in a medical facility that could continue my current specialists recommended requires. The appeal was denied processing on 8-23-01...On 8-28-01 I filed an "emergency" appeal on the same issues....This appeal put defendants Andreasen and Sauhkla on notice that their actions would deprive me...A few days the appeal was due. I was involved in a rule infraction so serious in nature that it was sent to the district attorney's office for possible prosecution and would mandate a SHU term...for at least 16 months. Defendants Prebula and Gavia told me at a classification committee that nothing in this world could stop my transfer now.

8

> In an unprecedented move even by CDC's standards, I was put on a special transport and rushed to High Desert State Prison, despite a pending rules violation report, SHU term assessment and court proceedings in Solano County.  At a classification hearing at High Desert State Prison I was told it is against CDC's policy and rules to transfer any inmate with pending disciplinary or court matters pending, and told that custody at CMC "had it out for me."
>
> . . . When I returned to CMF on 10-18-01, defendants Prebula and Gavia told me they conspired with doctors to transfer me where I couldn't receive medical care...They also told me I'd likely be dead before I could ever make it to trial on this case . . . .

Dckt. No. 73, Ex. 4.  Plaintiff also incorporates by reference his allegations in an earlier pleading in this case, which stated:

> Plaintiff was returned to CMF in October of 2001, to attend court proceedings in Solano County Court.  While there, he had the opportunity to speak to Defendants Andreasen, Sauhkla, Prebula, and Gavia.
>
> When plaintiff told Dr. Sauhkla that HDSP was unable to provide the treatment, diet, elevated bed, and pain management plaintiff was receiving at CMF as ordered by the specialists, defendant Sauhkla stated, "Are you sure?  He told me they have everything we do."  When plaintiff asked him who he was referring to, he said, "Mr. Prebula."
>
> In the B-1 clinic, plaintiff spoke with Andreasen, and related the same information.  Andreasen stated to plaintiff, "Look, Giraldes...I'm sorry I had to do that to you, but you pissed them off so bad, I had no choice."  When plaintiff asked him who he had pissed off, he said, "You know, custody staff."  Back in the housing unit, defendant saw plaintiff on his way back to an institutional classification committee.  In the presence of Gavia and plaintiff's "escort," Prebula said, "Jeeze, you're not dead yet?"  When plaintiff asked him how he managed to get plaintiff cleared by the doctors, he stated, "Hell, I've been trying for 3 years, you know that.  Then he (indicating Gavia) came up with a good one, when he had to make a new file for you.  We took your medical file and created a new volume, since it was so big.  Then we just put crap in it like a couple of blood test and x-rays that didn't say anything, then threw it in front of the doctor.  Pretty slick, huh?"  When plaintiff told Prebula that it would be discovered, he said, "I'm not worried about it.  You'll be dead before that happens."  All of this was in Gavia's presence.  Although he didn't admit to being a party to this, he didn't deny his involvement when Prebula stated that it was his idea.

9

Dckt. No. 21.

Defendants Gavia and Prebula's declarations state that they had no input into the doctor's recommendation that plaintiff be transferred. *Id.*, Attach. 3, 6. Defendants Andreasen and Sauhkla's declarations assert that their recommendations that plaintiff be removed from Category O and transferred to another institution consistent with his custody level were based solely on medical considerations and were not influenced by members of CMF's custodial staff. Dckt. No. 65, Attach. 1, 8. Yet, if plaintiff's declaration is believed, including its incorporation of his earlier pleading attributing key statements to Andreasen ("I'm sorry I had to do that to you, but you pissed them off so bad, I had no choice") and Prebula[2] in the presence of Gavia, there is evidence that at least those three defendants were involved in the decision and were motivated by retaliation. A reasonable fact finder could chose to believe or disbelieve plaintiff's accounts of these alleged statements. Whether they are believed is material. Thus, there are disputed issues of material fact as to whether Prebula and Gavia played a part in plaintiff being medically cleared for transfer to HDSP and as to whether Andreasen's recommendation to transfer plaintiff to another prison was based solely on medical considerations.

However, there is no evidence that defendant Sauhkla knew that HDSP could not provide for plaintiff's medical needs at the time that he recommended that plaintiff be transferred. Rather, plaintiff implies that Sauhkla was told by Prebula that HDSP could provide for plaintiff's medical needs. Plaintiff argues that Sauhkla was put on notice that HDSP could not meet his medical needs when plaintiff filed an internal appeal after Sauhkla had medically cleared him for transfer. However, plaintiff has not presented evidence that Sauhkla was even aware of the internal appeal. Plaintiff has not presented sufficient evidence so that a jury could find that Sauhkla actually knew, at the time that he recommended the transfer, that HDSP could not

---

[2] Prebula is claimed to have stated: "We took your medical file and created a new volume, since it was so big. Then we just put crap in it like a couple of blood test and x-rays that didn't say anything, then threw it in front of the doctor. Pretty slick, huh?"

10

provide for plaintiff's medical needs. *See Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir.2002) (if a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk). Thus, defendant Sauhkla is entitled to summary judgment.

There are disputed issues of fact as to whether plaintiff was provided adequate medical care at HDSP. Although defendants state that plaintiff received adequate care at HDSP, arguing that he was prescribed medications to block the production of stomach acid, double meal portions, liquid high-protein food supplements, and a pillow to elevate his head, as he was at CMF (Dckt. No. 63 at 9-11),[3] the care relative to plaintiff's diet management is disputed. Plaintiff alleges that HDSP has not provided adequate medical care. He asserts that HDSP has been unable to accommodate his diet, and gives him six meals to be eaten in three sittings instead of the equivalent of three meals to be eaten in six. Dckt. No. 73 at 6. Plaintiff alleges that he cannot eat 80% of the food that he is served. *Id.*, Attach. 4. He also alleges that he needs an elevated bed but only received an extra pillow for a 60-day period years ago. *Id.* Moreover, plaintiff alleges that he has been denied pain medication because it is unavailable at HDSP. *Id.* Whether his testimony or that of defendants should be believed is a question for the fact finder at trial. Again, how credibility is resolved over this dispute is material. Withholding a required diet plan to the point that plaintiff could not eat the majority of what he was provided and the denial of needed pain medication, if true, is sufficient to demonstrate deliberate indifference to his medical needs.

Defendants also contend that they are entitled to qualified immunity. In resolving questions of qualified immunity, courts engage in a two-step inquiry. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled on other

---

[3] Defendants admit that the plaintiff was unable to receive the pain medication Ultram, because his order for it was not approved by the chief medical officer at HDSP. *Id.*

11

grounds by *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808, 818 (2009). If, and only if, the court finds a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case." *Id.* A motion for summary judgment based on the defense of qualified immunity is analyzed under the ordinary framework established for such motions. *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004). A defendant who makes a properly supported motion for summary judgment based on the defense of qualified immunity shifts the burden such that plaintiff must produce evidence in opposition. *Butler*, 370 F.3d at 964.

Taking the facts in the light most favorable to plaintiff, a reasonable jury could find that Andreasen, Prebula and Gavia violated plaintiff's constitutional rights by knowingly and intentionally transferring him to a prison where his medical needs would not be met. If they did so, there was a violation of a clearly established constitutional right. Defendants concede that it is clearly established that deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment.[4] *See* Dckt. No. 63 at 14-15. Defendants are therefore not entitled to qualified immunity and the issue of whether plaintiff's rights were, in fact, violated must be resolved at trial.

**IV. Conclusion**

Accordingly, it is hereby RECOMMENDED that defendants' April 28, 2005, motion for summary judgment be denied as to defendants Andreasen, Prebula and Gavia and granted as to defendant Sauhkla.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written

---

[4] Defendants fail to explain why they believe that they are entitled to qualified immunity, stating merely that "given the undisputed facts of this case, the answer is in the affirmative." Dckt. No. 63 at 16.

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 23, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

13