UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LARRY GIRALDES, JR.,

                                        NO. CIV. S-01-2110 LKK/EFB

        Plaintiff,

    v.                                    O R D E R

T. PREBULA, et al.,

        Defendants.
_____/

Plaintiff Larry Giraldes, Jr., a prisoner proceeding with appointed counsel, seeks relief under 42 U.S.C. § 1983, based on allegations that Defendants violated his Eighth Amendment rights by purposefully withholding medical care for several chronic conditions.

Pending before the court is Defendants' motion to dismiss Plaintiff's Second Amended Complaint. See Defs' Mot., ECF No. 213; Pls' Second Am. Compl., ECF No. 212.

For the reasons provided herein, the court DENIES, in part, and GRANTS, in part, Defendants' motion.

1

# I. BACKGROUND

Plaintiff Larry Giraldes, Jr. ("Plaintiff" or "Giraldes") filed and appealed at least three medically-related grievances with the Inmates Appeals Branch ("IAB") of the California Department of Corrections and Rehabilitation ("CDCR").  The earliest Director Level Decision denying a grievance was February 27, 2002.  Decl. of N. Grannis in Supp. of Defs.' Mot. to Dismiss FAC, ECF. No. 17, at 2.  The other two denials were issued on March 22, 2002 and April 22, 2002.  Id.

On November 16, 2001, Giraldes filed a civil complaint in this court alleging that defendants were deliberately indifferent to his serious medical needs when they transferred him to High Desert State Prison ("HDSP").  On July 17, 2002, the Magistrate Judge granted Plaintiff's request to proceed in forma pauperis.  Order, ECF. No. 6.  Thus, Plaintiff received final denials of his grievances after he filed his complaint, but before he was granted in forma pauperis status.  On August 12, 2002, Defendants filed a motion to dismiss, arguing that Plaintiff had failed to exhaust the grievance process prior to filing his suit.  Defs.' P. & A. in Supp. of Mot. to Dismiss, ECF No. 16, at 1, 4-7.

On January 2, 2004, the Magistrate Judge issued findings and recommendations that defendants' motion should be denied because Plaintiff's action was brought, for purposes of exhaustion under the Prison Litigation Reform Act, on July 17, 2002, when the court authorized him to proceed in forma pauperis, and not on November 16, 2001, when he filed his original complaint.  Findings and

2

1   Recommendations, ECF No. 22.   The Magistrate Judge reasoned that
2   even though Plaintiff filed his lawsuit before the Director's Level
3   denials on his grievances were issued, Giraldes' authorization to
4   proceed in forma pauperis was issued after Plaintiff's health-
5   related grievances with the CDCR had been denied at Director's
6   Level.   Id. at 3-4.   Defendants did not object to the findings and
7   recommendations, which were adopted in full by this court on March
8   26, 2004.   Order, ECF No. 23.

9        On April 7, 2004, Defendants filed an answer to Plaintiff's
10  amended complaint.   Defs' Answer, ECF No. 24.   As their third
11  affirmative defense, Defendants argued that "[s]ome of plaintiff's
12  claims are barred because he has not exhausted the administrative
13  grievance process."   Id. at 3.   As their fourth affirmative
14  defense, Defendants argued that "[u]nder the 'total exhaustion'
15  rule, the entire action is barred because plaintiff has failed to
16  exhaust some of his claims."   Id.

17       On April 28, 2005, Defendants filed a motion for summary
18  judgment on the grounds that Defendants did not act with deliberate
19  indifference to plaintiff's rights and were entitled to qualified
20  immunity.   Defs' Mot., ECF No. 62.   They did not argue that
21  Plaintiff had failed to exhaust his administrative remedies.   On
22  January 24, 2006, the Magistrate Judge recommended that Defendants'
23  motion for summary judgment be granted.   Findings &
24  Recommendations, ECF No. 98.   On March 24, 2006, this court
25  declined to adopt the findings and recommendations because, "From
26  what the court c[ould] tell, disputed facts exist warranting closer

3

1   scrutiny of the parties' evidence and the motions pending before
2   the court." Order, ECF No. 102. This court therefore remanded the
3   case to the Magistrate Judge to conduct further proceedings
4   consistent with the order. Id. The court did not issue a final
5   ruling on defendants' motion for summary judgment. Nonetheless,
6   on April 10, 2006, Defendants appealed the order contending that
7   this court found that they were not entitled to qualified immunity.
8   Notice of Interlocutory Appeal, ECF No. 103. On May 6, 2008, the
9   Ninth Circuit dismissed the appeal "[b]ecause the district court's
10  order contemplated further action on the summary judgment, [and was
11  thus] not a final appealable order." Order, ECF No. 118.

12      While this case was on appeal, the Ninth Circuit decided Vaden
13  v. Summerhill, 449 F.3d 1047 (9th Cir. 2006). In Vaden, the Ninth
14  Circuit held that a prisoner action is "brought" to the court under
15  the Prison Litigation Reform Act, 42 U.S.C. §1997e(a), when the
16  complaint is tendered to the district clerk, not when the prisoner
17  is allowed to proceed in forma pauperis. Id. at 1050.

18      After the Ninth Circuit dismissed Defendants' appeal,
19  Defendants did not file any papers in connection with this case
20  until January 2010, when the Magistrate Judge[1] ordered a response
21  to Plaintiff's motion for a preliminary injunction. Order, ECF No.
22  130. In their opposition to this motion, Defendants did not argue
23  that Plaintiff was unlikely to succeed on the merits of his claims
24  because they were not exhausted prior to his filing suit.

25  _____

26      [1] After the appeal to the Ninth Circuit was denied, this case
    was re-assigned to a different magistrate judge.

1   See Defs' Opp'n, ECF No. 131.

2       On June 24, 2010, the Magistrate Judge issued findings and
3   recommendations on Defendants' remanded 2005 motion for summary
4   judgment.  Findings & Recommendations, ECF No. 136.  The Magistrate
5   Judge recommended that Defendants' motion for summary judgment be
6   denied because of the presence of triable issues of fact.  On July
7   8, 2010, Defendants filed objections to the findings and
8   recommendations on the grounds that there were no facts in the
9   record from which a reasonable jury could determine that they were
10  deliberately indifferent to Plaintiff's serious medical needs.
11  Defs' Objections, ECF No. 137.  Defendants did not, however, raise
12  Plaintiff's failure to exhaust his administrative remedies prior
13  to bringing this action.  On August 31, 2010, this court adopted
14  the Magistrate Judge's recommendation that Defendants' motion for
15  summary judgment be denied in its entirety.  Order, ECF No. 142.

16      Nine months after the Magistrate Judge issued his findings and
17  recommendations, on March 16, 2011, Defendants filed their pretrial
18  statement requesting that the Magistrate Judge dismiss this action
19  as unexhausted under Ninth Circuit's holding in Vaden v.
20  Summerhill.  Pretrial Statement, ECF No. 153.  On May 22, 2011, the
21  Magistrate Judge issued a pretrial order recommending denial of
22  this request because the deadline for filing dispositive motions
23  had passed on May 2, 2005.  Pretrial Order, ECF No. 159; see also
24  Order, ECF No. 50 (granting Defendants' request to extend the time
25  for filing their motion for summary judgment to May 2, 2005).  The
26  Magistrate Judge also recommended denial of this request because

1  Defendants had waited three years to raise the exhaustion issue
2  after the case had been remanded from the Ninth Circuit in 2008.
3  Id.

4       On June 16, 2011, Defendants moved for reconsideration of this
5  court's order denying their motion to dismiss for failure to
6  exhaust, arguing that intervening authority had re-defined when a
7  prisoner has "brought" his action for purposes of exhaustion under
8  the Prison Litigation Reform Act ("PLRA").   Defs' Mot., ECF No.
9  164.   On July 29, 2011, this court denied Defendants' motion for
10 reconsideration.   Order, ECF No. 172.   This court found that
11 Defendants had waived the affirmative defense of failure to exhaust
12 administrative remedies because they had "failed to seek dismissal
13 of this case following remand from the Ninth Circuit in 2008,
14 failed to raise any concerns about exhaustion when objecting to the
15 Magistrate Judge's findings and recommendations in January and in
16 July 2010, and only now, at the eve of trial, did they raise these
17 concerns in their pretrial statement."   Id. at 6.   This court
18 further noted that Defendants had "failed to present any
19 explanation for this delay."   Id.

20      On January 25, 2012, Plaintiff filed a motion to reopen
21 discovery for the limited purpose of retaining a medical expert,
22 and to re-set pretrial dates. Pl's Mot., ECF No. 189. On February
23 24, 2012, this court granted Plaintiff's motion to re-open
24 discovery "for the limited purpose of retaining a medical expert
25 to conduct a thorough review of plaintiff's medical file and to
26 provide a qualified opinion relating to the standard of medical

1  care."  Order, ECF No. 192.

2      Due to the court's re-opening of limited discovery, on June

3  1, 2012, this court issued a new status (pretrial scheduling)

4  order, re-setting the trial for October 8, 2013, the discovery

5  cutoff for January 29, 2013, and the law and motion deadline for

6  March 29, 2013.  Order, ECF No. 202.

7      On August 30, 2012, Defendants' filed a renewed motion for

8  reconsideration of this court's March 29, 2004 order denying

9  Defendants' motion to dismiss for failure to exhaust.  Defs' Mot.,

10 ECF No. 205.  Defendants argued, <u>inter</u> <u>alia</u>, that: (1) they had not

11 waived the affirmative defense of failure to exhaust administrative

12 remedies because they "asserted the affirmative defense of

13 nonexhaustion in their answer"; and (2) "now that the Court has set

14 a new dispositive motion deadline, the Court should entertain this

15 renewed motion for reconsideration."  Defs' P. & A., ECF No. 205,

16 Att. 1, at 4.

17     On October 4, 2012, this court granted Defendant's motion for

18 reconsideration of the March 29, 2004 order.  The court found that

19 "given the court's re-opening of discovery and re-setting of the

20 law and motion deadline, as well as the fact that Defendants did

21 raise their non-exhaustion argument in the answer to Plaintiff's

22 amended complaint, the court, upon reconsideration, finds that

23 Defendants did not waive their affirmative defense that Plaintiff

24 failed to exhaust his administrative remedies as required by the

25 PLRA."  Order, ECF No. 209, at 8-9.  The court further provided:

26 ////

1

> [T]he Ninth Circuit's holding in <u>Vaden v. Summerhill</u>, 449 F.3d 1047 (9th Cir. 2006), indicates that Plaintiff brought this action on November 16, 2001, when he filed his original complaint, and therefore, before the Director's Level denials on Plaintiff's grievances were issued. Because Plaintiff "may initiate litigation in federal court only after the administrative process ends and leaves his grievances unredressed," which Plaintiff failed to do in this case, the court "must dismiss his suit without prejudice." <u>Vaden</u>, 449 F.3d at 1051 (9th Cir. 2006) (citing <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1120 (9th Cir. 2003)).

<u>Id.</u> at 9-10.   The court then dismissed Plaintiff's amended complaint, without prejudice.   <u>Id.</u> at 11.

On November 2, 2012, Plaintiff filed a Second Amended Complaint.

On November 15, 2012, Defendants filed the instant motion to dismiss Plaintiff's Second Amended Complaint.   Defendants argue, <u>inter alia</u>, that: (1) Plaintiff cannot cure his failure to exhaust before bringing this action by amending his complaint because no amendment can alter the fact that he brought this action before exhausting the administrative process; (2) neither of the two grievances that Plaintiff submitted from CMF gave notice of his deliberate indifference claims against Gavia and Prebula; and (3) the court should not permit Plaintiff to pursue claims against Defendants Saukhla or Kearney because the court granted summary judgment on the claim against Saukhla and Plaintiff never served Kearney with process.[2]   Defs' Mot., ECF No. 213, Att. 1, at 6-16.

---

[2] Plaintiff has stated his non-opposition to Defendants' motion to dismiss Defendants Saukhla and Kearney in this case.

## II.   ANALYSIS

**A. Amendment in Light of Plaintiff's Failure to Exhaust**

In its most recent prior order, this court determined that Plaintiff failed to exhaust his administrative remedies, with respect to the allegations upon which this action proceeds, before filing the initial complaint in this action on November 16, 2001. The parties suggest that a preliminary issue for decision is whether Plaintiff satisfied the PLRA's exhaustion requirement, pursuant to Rhodes v. Robinson, 621 F.3d 1002 (9th Cir. 2010), when he exhausted his remedies in this action after filing the initial complaint, but before filing the Second Amended Complaint currently at issue.

Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19, 166 L.Ed.2d 798 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Section 1997e(a) mandates that "[n]o action shall be brought . . . until such administrative remedies as are available are exhausted," 42 U.S.C. § 1997e(a), and "requires that a prisoner exhaust administrative remedies before submitting any papers to the federal courts," Vaden v. Summerhill, 449 F.3d 1047 (9th Cir. 2006).

In Rhodes v. Robinson, the Ninth Circuit made an exception to the general rule, based on the circumstances in Rhodes's case. On January 4, 2011, Kavin M. Rhodes, a prisoner proceeding pro se,

---

Pl's Opp'n, ECF No. 215, at 9.   Defendants' motion to dismiss Defendants Saukhla and Kearney is, therefore, GRANTED.

1   filed a civil rights action pursuant to 42 U.S.C. § 1983 against

2   prison guards for retaliating against him in violation of the First

3   Amendment.   Rhodes v. Robinson, 621 F.3d 1002, 1003 (9th Cir.

4   2010).  On March 20, 2006, Rhodes filed a second amended complaint

5   adding new claims "alleg[ing] that the same defendant guards

6   perpetrated new retaliatory acts against [him] between January 2,

7   2002, and November 15, 2003."   Id.   In the second amended

8   complaint, Rhodes alleged "that he had completed the grievance

9   process available at [the prison] concerning the facts relating to

10  the new claims alleged in the [second amended complaint]." Id. at

11  1004.  The district court dismissed Rhodes' new claims based on his

12  failure to exhaust administrative remedies before filing suit.  The

13  Ninth Circuit reversed the district court's dismissal, holding that

14  "Rhodes' [second amended complaint] was, in fact, a supplemental

15  complaint, regardless of the label attached to it by the pro se

16  prisoner-plaintiff, permitted under Federal Rule of Civil Procedure

17  15(d) because [the new] claims . . . arose after the initial

18  complaint was filed," and the district court had improperly

19  dismissed Rhodes' new claims.[3]  Id. at 1006-07.  The court found

20  that Rhodes was in compliance with § 1997e(a) if he exhausted his

21  remedies for the new claims prior to filing the second amended

22  complaint.

23  ───────────────

24       [3] Rule 15(d) provides, in part: "On motion and reasonable
    notice, the court may, on just terms, permit a party to serve a
25  supplemental pleading setting out any transaction, occurrence, or
    event that happened after the date of the pleading to be
26  supplemented."  Fed.R.Civ.P. 15(d).

1    In this case, unlike in <u>Rhodes</u>, Plaintiff's Second Amended

2  Complaint was not a supplemental complaint, because Plaintiff did

3  not bring new claims in the Second Amended Complaint which arose

4  *after* the initial complaint had been filed.   Here, all of

5  Plaintiff's claims against Defendants arose before the initial

6  complaint was filed.   Therefore, under § 1997e(a), Plaintiff was

7  required to exhaust his administrative remedies for the allegations

8  in the Second Amended Complaint, prior to the filing of the initial

9  complaint.   As previously noted, this court determined that

10 Plaintiff failed to exhaust his remedies, with respect to the

11 allegations upon which this case proceeds, before the date he filed

12 the initial complaint in this action.[4]

13    A blind application of the rules set forth in <u>McKinney</u> and

14 <u>Vaden</u>, failing to consider context, equities, and the particular

15 and anomalous history of this case, would indicate that this entire

16 action should be dismissed without prejudice.   See <u>Lira v. Herrera</u>,

17 ─────────────────

18    [4]  In his opposition to Defendants' motion to dismiss, Plaintiff makes arguments indicating that his final level of administrative appeal was unavailable due to his transfer to

19 another facility and due to improper screening of his administrative grievances and, thus, Plaintiff's administrative

20 appeals were effectually exhausted before filing suit in this court.  Pl's Opp'n, ECF No. 215, at 3-4.  Plaintiff did not raise

21 these arguments in his opposition to Defendants' second motion for reconsideration, <u>see</u> Pl's Opp'n, ECF No. 206, and thus, the court

22 did not evaluate these arguments when it determined that, upon reconsideration and given the holding in <u>Vaden</u>, Plaintiff's claims

23 were unexhausted before filing suit in federal court.  Defendants correctly note in their Reply, however, that Plaintiff made these

24 arguments in opposing Defendants' initial motion for reconsideration in 2011, <u>see</u> Pl's Opp'n, ECF No. 166, at 2-6.  In

25 reference to these arguments, the court provided, "Plaintiff opposes reconsideration raising several meritless arguments."

26 Order, ECF No. 172, at 5.

1   427 F.3d 1164, 1170 (9th Cir. 2005) (citing <u>McKinney</u>, 311 F.3d at

2   1200).[5]   This court declines to adhere to a rule devoid of reason.

3        This case has proceeded for over eleven years, past both the

4   discovery and the summary judgment stages, and is now ripe for

5   trial.  If this court were to dismiss Plaintiff's action, Plaintiff

6   would be barred from having his claims heard on their merits, due

7   in equal part to the government's failure to raise their argument

8   of non-exhaustion for years after the holding in <u>Vaden</u>, and the

9   Plaintiff's reliance on prior decisions made by this court, which

10  found, on more than one occasion, that Defendants had waived their

11  exhaustion of remedies defense.

12       At heart, then, is whether this court erred in finding that

13  Plaintiff had failed to exhaust his administrative remedies, upon

14  the most recent reconsideration of Defendants' motion to dismiss

15  and over ten years after this suit was initiated.  <u>See</u> Order, ECF

16

17       [5]  Even though Plaintiff received final denials of his
    administrative grievances, dismissal of the entire action "without
18  prejudice," as required by <u>Lira</u> and <u>McKinney</u>, would effectually
    constitute a dismissal *with* prejudice because Plaintiff would
19  likely be barred by the relevant statute of limitations from
    pursuing these claims in this forum again.  <u>See</u> <u>Cervantes v. City</u>
20  <u>of San Diego</u>, 5 F.3d 1273, 1275 (9th Cir. 1993) (in a section 1983
    action, providing that "[a]s with the limitations period itself,
21  we borrow our rules for equitable tolling of the period from the
    forum state"); <u>Maldonado v. Harris</u>, 370 F.3d 945, 954 (9th Cir.
22  2004) (finding that California Code of Civil Procedure § 335.1
    (West Supp. 2004) provides a two-year statute of limitations for
23  personal injury actions, which also applies to actions brought
    under 42 U.S.C. § 1983); <u>Taylor v. Kociski</u>, No. 11-cv-189, 2012 WL
24  6878887, at *7, 2012 U.S. Dist. LEXIS 184813 at *22 ("California
    law precludes application of the equitable tolling doctrine when,
25  following the dismissal of a case, a plaintiff simply re-files the
    case in the same court.") (citing <u>Martell v. Antelope Valley</u>
26  <u>Hospital Medical Center</u>, 67 Cal.App.4th 978, 985, 79 Cal.Rptr.2d
    329 (1998)).

1  No. 209.  It did.

2      Applying the "law of the case" doctrine, the court should have

3  found that the question of whether Defendants had waived their

4  affirmative defense of non-exhaustion had been conclusively put to

5  rest by this court before Defendants brought their second motion

6  for reconsideration in August of 2012.  Under the law of the case

7  doctrine, a court is ordinarily precluded from reconsidering an

8  issue that has already been decided by the same court.  Thomas v.

9  Bible, 983 F.2d 152, 154 (9th Cir. 1993) (citing Milgard Tempering,

10 Inc. v. Selas Corp. of America, 902 F.2d 703, 715 (9th Cir. 1990)).

11 The doctrine is a judicial invention designed to aid in the

12 efficient operation of court affairs and is founded upon the sound

13 public policy that litigation must come to an end.  United States

14 v. Smith, 389 F.3d 944, 948 (9th Cir. 2004) (internal citations

15 omitted).  The doctrine serves to advance the principle that in

16 order to maintain consistency during the course of a single

17 lawsuit, reconsideration of legal questions previously decided

18 should be avoided.  Id. at 948-49 (citing United States v. Houser,

19 804 F.2d 565, 567 (9th Cir. 1986)).  Issues that a district court

20 determines during pretrial motions become law of the case.  Id. at

21 949 (citing United States v. Phillips, 367 F.3d 846, 856 (9th Cir.

22 2004), cert. denied, 125 S.Ct. 479 (Nov. 8, 2004)).

23     While courts have some discretion not to apply the doctrine

24 of law of the case, that discretion is limited.  Thomas, 983 at

25 155.  Depending on the nature of the issue and on the level or

26 levels of the court or courts involved, a court may have discretion

1  to reopen a previously resolved question under one or more of the
2  following circumstances: (1) the first decision was clearly
3  erroneous; (2) an intervening change in the law has occurred; (3)
4  the evidence on remand is substantially different; (4) other
5  changed circumstances exist; and/or (5) a manifest injustice would
6  otherwise result.  Id. (citing Milgard, 902 F.2d at 715; United
7  States v. Tham, 960 F.2d 1391, 1397 (9th Cir. 1991); United States
8  v. Estrada-Lucas, 651 F.2d 1261, 1263-65 (9th Cir. 1980)).

9       The court granted Defendants' second motion for
10 reconsideration primarily based on the changed circumstances of a
11 re-set pre-trial schedule and a new dispositive motion deadline.
12 See Order, ECF No. 209.  At that time, however, the court did not
13 adequately consider the remaining factors provided in Thomas.  If
14 this court had considered those remaining factors, it would have
15 found that: (1) the court's prior findings that Defendants had
16 waived their affirmative defense of failure to exhaust were not
17 clearly erroneous, given the years following the Ninth Circuit's
18 remanding of this case and the many opportunities that Defendants
19 had let pass before asserting that Plaintiff had failed to exhaust
20 his administrative remedies; (2) no intervening change in the law
21 had occurred between the court's prior findings that Defendants had
22 waived their affirmative defense of non-exhaustion and Defendants'
23 second motion for reconsideration; (3) the evidence before the
24 court upon second reconsideration was not substantially different;
25 and (4) no manifest injustice would have resulted if the court had
26 adhered to its prior findings because Plaintiff had, in fact,

1  received final denials of his grievances at the administrative

2  levels and the case was ripe for trial.  Thus, upon considering all

3  of the Thomas factors, the court should have found that, upon

4  second reconsideration of this court's March 29, 2004 order, it was

5  precluded by the law of the case doctrine from reopening the

6  previously resolved question of whether Defendants had waived their

7  affirmative defense of non-exhaustion.

8      Defendants now argue that the law of the case doctrine

9  requires the court to dismiss this entire action in adherence to

10  the court's most recent finding that Plaintiff failed to exhaust

11  his administrative remedies.  See Defs' Reply, ECF No. 216, at 3-5.

12  However, upon considering the Thomas factors, the court here finds

13  that it is appropriate to reopen its most recent finding because:

14  (1) this court's failure to consider all of the Thomas factors when

15  deciding Defendants' second motion for reconsideration was clearly

16  erroneous; and (2) manifest injustice to Plaintiff would result if

17  this court were to dismiss the entire action.

18      Again, the statute of limitations for Plaintiff's claims has

19  passed and, upon dismissal of the action, Plaintiff would likely

20  be barred from bringing another action based on these claims in

21  this forum, even though Plaintiff received final denials of his

22  administrative grievances and his action was found meritorious

23  enough to survive both a motion to dismiss and a motion for summary

24  judgment.  A dismissal based on Plaintiff's failure to exhaust at

25  this belated point in the litigation would be unjust because proper

26  exhaustion would now be futile (where Plaintiff's Director's Level

1  grievances were already denied), and Plaintiff would be prejudiced

2  from having his claims litigated on their merits due to Defendants'

3  years of inaction and this court's prior findings that Defendants

4  had waived their affirmative defense of nonexhaustion.

5      In considering the remaining Thomas factors, the court finds

6  that no intervening change in the law has occurred between this

7  court's October 4, 2012 order and Defendants' instant motion to

8  dismiss; the evidence before the court is not substantially

9  different; and no changed circumstances exist from those before the

10  court on Defendants' second motion for reconsideration.  However,

11  the court finds it appropriate to reopen its October 4, 2012 ruling

12  that Plaintiff failed to exhaust his administrative remedies

13  because that finding was clearly erroneous given the history of the

14  case and would result in manifest injustice.

15      To properly observe the law of the case, the court therefore

16  determines that it erred in its October 4, 2012 order.  Due to

17  their years of inaction, and the reasons provided by this court on

18  a number of previous occasions, Defendants have waived their

19  affirmative defense of non-exhaustion.[6]

20      Moreover, the Supreme Court has found that application of the

21  exhaustion doctrine is "intensely practical" and that the ultimate

22  decision of whether to waive exhaustion should be guided by the

23  policies underlying the exhaustion requirement.   Bowen v. City of

24  _____

25      [6] Due to the court's previous error, it was likely unnecessary
for the court to dismiss Plaintiff's amended complaint with leave
26  to amend.  See Order, ECF No. 209.  Nevertheless, this case is now
proceeding upon Plaintiff's second amended complaint.

1  New York, 476 U.S. 467, 484, 106 S.Ct. 2022, 2032, 90 L.Ed.2d 462

2  (1986).   In the context of the prison grievance process, the

3  Supreme Court has provided that the goals served by the exhaustion

4  requirement include "allowing a prison to address complaints about

5  the program it administers before being subjected to suit, reducing

6  litigation to the extent complaints are satisfactorily resolved,

7  and improving litigation that does occur by leading to the

8  preparation of a useful record." Jones v. Bock, 549 U.S. 199, 219,

9  127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (citing Woodford v. Ngo, 548

10 U.S. 81, 88-91, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); Porter v.

11 Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)).

12 If this court is to take the goal of efficient and improved

13 litigation seriously, it would be grossly inappropriate to dismiss

14 this entire action for non-exhaustion on the eve of trial, and to

15 foreclose the Plaintiff from litigation of the merits of his claim

16 at this stage in the proceedings.

17      For these reasons, Defendants' motion to dismiss Plaintiff's

18 action is DENIED.

19 **B. Notice in the Administrative Process**

20      Defendants Prebula and Gavia move to dismiss Plaintiff's

21 claims against them, arguing that none of Plaintiff's grievances

22 gave them notice of the claims against them.

23      The Ninth Circuit has held that the primary purpose of a

24 prison grievance is to notify the prison of a problem. Griffin v.

25 Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).   A grievance need not

26 include legal terminology or legal theories unless they are in some

17

1  way needed to provide notice of the harm being grieved.   Id.   A

2  grievance also need not contain every fact necessary to prove each

3  element of an eventual legal claim.   Id.   The primary purpose of

4  a grievance is to alert the prison to a problem and facilitate its

5  resolution, not to lay groundwork for litigation.   Id. (citing

6  Johnson v. Johnson, 385 F.3d at 522, *cited with approval in* Jones,

7  549 U.S. at 219, 127 S.Ct. 910).

8       In Plaintiff's Second Amended Complaint, Plaintiff makes the

9  following allegations against Defendants Gavia and Prebula:

10          Animosity between Defendants Prebula and Gavia
            began to get increasingly worse each time Plaintiff
11          would get a "write up" or be placed into Ad.Seg
            with Prebula and Gavia threatening Plaintiff with
12          threats of transfer to a "warzone" due to
            Plaintiff[']s behavior.
13
            . . . .
14
            After being at CMF for seven years and after
15          numerous attempts by Defendants Prebula and Gavia[]
            trying to get Plaintiff transferred, Defendants
16          Prebula and Gavia[] asked Defendant Saukhla to
            draft a 128-C medical chrono that recommended
17          Plaintiff be transferred and that his "Category O"
            be discontinued.
18
            Defendant Saukhla did in fact draft a document for
19          Defendants Prebula and Gavia on May 24, 2001.
            Defendant Andreasen cosigned it.
20
            Defendants Prebula, Gavia, and Saukhla then held
21          onto said 128-C medical chrono until Plaintiff had
            been released from Ad.Seg and when the regular
22          facility captain had gone on vacation or some other
            relief that allowed Prebula to sit as "Acting"
23          Captain and hold an impromptu and incomplete "Unit"
            Classification Committee on August 8, 2001.
24
            Defendants Prebula and Gavia refused to provide
25          Plaintiff any of the due process rights guaranteed
            to inmates at the August 8, 2001 "Unit"
26          Classification Committee by not giving him advance

18

notice of any adverse action being considered, not
providing him with any documents prior to the
hearing, not allowing him to make a statement of
his disagreement about transfer of his preference
as to where he wanted to be placed as well as the
committee not having the mandated members it was
supposed to have.

. . . .

Plaintiff had been placed into Ad.Seg for a SHUable
offense that precluded any transfer and even had a
notice from the records department that stated "The
above named inmate [] is not to be transferred
until . . . you receive written notification from
this office advising you that the CDC-804 should be
withdrawn."   When Defendants Prebula and Gavia
discovered the above factors that individually
precluded Plaintiff's transfer and had thwarted
their exhausted plan to transfer Plaintiff, they
arranged a "Special Transportation Unit" to take
Plaintiff to HDSP in the early hours of September
28, 2001.

If Plaintiff had not been placed in a "Special
Transportation Vehicle" on September 28, 2001, he
would have been seen by the Main Classification
Committee where the acts of Defendants[] Prebula,
Gavia, . . . and others[] had done [sic] in getting
Plaintiff's transfer approved.

Pl's Second Am. Compl., ECF No. 212, at ¶¶ 43, 47-50, 60-61

(emphasis omitted).

Plaintiff made the following assertions, inter alia, in his

prison grievances:

[Regarding a denial of surgery that had been
recommended by Dr. Johnson, a specialist from U.C.
Davis]

On 10-18-01[,] I was returned to Vacaville.
Despite this appeal being granted at the Second
Level, medical staff at C.M.F. refuse to comply
with the Memorandum.   Appellant is forced to seek
judicial relief for the pain and suffering
throughout the time he was denied treatment for the
relief of pain, and surgery, as it is obvious that
this denial is deliberate, indifferent, and wanton.

19

1          This goes past mere negligence, as specialists have
2          made their recommendations, diagnosis, and
           treatment plans clear.

3  Young Decl., ECF No. 214, Att. 2 (Inmate Appeal # CMF-01-01006).

4          I was seen in U.C.C. on 8-8-01, and put up for
5          transfer to a Non-Medical facility.  Because of
           multiple surger[ie]s on my esophagus that resulted
6          in over 13 cm of my esophagus being removed, I
           cannot tolerate solid foods . . . . [Request] need
7          for appropriate placement in an institution that
           can provide all the treatments, medications, and
8          diet I am currently getting. . . . High Desert
           cannot provide the medications, diet, and
9          treatments, plus medical appliances, ordered by the
           specialists prior to transfer.

10          . . . .

11          Transfer to a non-medical institution will result
12          in a threat to my health and safety, and could
           cause other serious and irreparable harm, when I
13          don't have immediate access to medical care.

14  Young Decl., ECF No. 214, Att. 2, (Inmate Appeal # CMF-01-1252).

15     Plaintiff's grievances clearly indicate that he was contesting

16  his transfer to an institution at which he would fail to receive

17  necessary medical care.  Because Defendants Gavia and Prebula are

18  alleged, in the Second Amended Complaint, to have been closely

19  involved in the decision to transfer Plaintiff, and Plaintiff's

20  transfer formed the crux of his prison grievances, the court finds

21  that the allegations set forth in the prison grievances adequately

22  notified Defendants Gavia and Prebula of the problems for which

23  Plaintiff currently seeks redress.

24     Defendants' motion to dismiss Plaintiff's claims against

25  Defendants Gavia and Prebula is, therefore, DENIED.

26  ////

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**III. CONCLUSION**

According, the court ORDERS as follows:

      [1]  Defendants' motion to dismiss Defendants Saukhla and Kearney is GRANTED.

      [2]  Defendants' motion to dismiss this action as a whole is DENIED.

      [3]  Defendants' motion to dismiss Plaintiff's claims against Defendants Gavia and Prebula is DENIED.

      [4]  A status conference is SET for July 1, 2013 at 2:30 p.m.

IT IS SO ORDERED.

DATED: May 2, 2013.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

21